UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, and THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE MARBLE INDUSTRY PENSION FUND, THE MARBLE INDUSTRY ANNUITY FUND, and TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, TRUSTEES OF THE INTERNATIONAL MASONRY INSTITUTE<br><br>Plaintiffs,<br><br>-against-<br><br>STAR CONSTRUCTION MARBLE & GRANITE, INC. and STAR CONSTRUCTION & STONE, INC.,<br><br>Defendant. | 17 CV _____<br><br>**COMPLAINT** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

### NATURE OF THE ACTION

1. This is a civil action pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1132(a)(3), 1145 ("ERISA"), and section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), and other applicable law, to collect delinquent employer contributions to a group of employee benefit plans, and for related relief.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and pursuant to 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this judicial district pursuant to 29 U.S.C. §§ 185(a) and 1132(e)(2).

## THE PARTIES

4. Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the "Tile Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The Tile Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). The Tile Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

5. Plaintiffs Trustees of the Bricklayers & Trowel Trades International Pension Fund and International Masonry Institute (the "International Benefit Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The International Benefit Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). The International Benefit Funds maintain their principal place of business at 620 F Street, N.W., Washington, D.C. 20004.

6. Plaintiffs Trustees of the Marble Industry Pension Fund, Marble Industry Annuity Fund, and Marble Industry Trust Fund (collectively, the "Marble Funds" and together with the Tile Funds, and the International Benefit Funds, the "Funds") are employer and employee trustees of multiemployer labor-management trust funds

-2-

organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5).  The Marble Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3).  The Marble Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

7. Defendant Star Construction Marble & Granite, Inc. ("SMG") is a corporation organized under the laws of the State of New York.  At relevant times, SMG was engaged in business as an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.  Upon information and belief, SMG maintains a place of business at 791 Onderdonk Avenue, Ridgewood, NY 11385.

8. Defendant Star Construction & Stone, Inc. ("SCS") is a corporation organized under the laws of the State of New York.  At relevant times, SCS was engaged in business as an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.  Upon information and belief, SCS maintains a place of business at 791 Onderdonk Avenue, Ridgewood, NY 11385.

## BACKGROUND

**The Collective Bargaining Agreements**

9. The Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Tile Setters and Tile Finishers Union") is a labor organization within the meaning of Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, and represents employees in an

industry affecting commerce as defined in Section 502 of the Taft-Hartley Act, 29 U.S.C. § 142.

10. The Marble Carvers, Cutters, and Setters Union, Local Union No. 7 of the International Union of Bricklayers and Allied Craftsman ("Marble Setters") and The Compact Labor Club of Marble Workers, Riggers, Crane and Derrickman of New York and Vicinity, Local No. 7 of The International Union of Bricklayers and Allied Craftsmen ("Marble Finishers") (collectively with Marble Setters as the "Marble Setter and Marble Finishers Union")(together with the Tile Setters and Tile Finishers Union, the "Unions") is a labor organization within the meaning of Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the Taft-Hartley Act, 29 U.S.C. § 142.

11. At all times relevant hereto, SMG is and was a party to, or manifested an intention to be bound by a collective bargaining agreement (the "Tile Union CBA") with the Tile Setters and Tile Finishers Union.

12. At all times relevant hereto, SMG is and was a party to, or manifested an intention to be bound by a collective bargaining agreement (the "Marble Union CBA") with the Marble Setter and Finishers Union.

13. At all times relevant hereto, SCS is and was a party to, or manifested an intention to be bound by the Tile Union CBA and the Marble Union CBA.

14. The CBAs required SMG and SCS to make specified hourly contributions to the Funds in connection with all work performed in the trade and geographical jurisdiction of the Union ("Covered Work").

15. In addition, the CBAs further provide that SMG and SCS must make its books and records available to the Funds or their representatives in order to verify the number of hours of Covered Work performed by SMG's employees.

16. In December 2015, representatives of the Tile Funds completed an audit of SMG's books and records (the "2011-13 Tile Funds Audit") covering the period from January 1, 2011 through December 31, 2013.

17. The 2011-13 Tile Funds Audit revealed that SMG owed $20,047.13 to the Tile Funds, consisting of: (1) a principal deficiency in the amount of $12,768.96; (2) interest of $4,032.58; (3) liquidated damages of $2,245.59; and (4) audit costs of $1,000.

18. In June 2017, representative of the Tile Funds completed an audit of SMG's books and records (the "2014 Tile Funds Audit") covering the period from January 1, 2014 through December 31, 2014.

19. The 2014 Tile Funds Audit revealed that SMG owed $92,613.89 to the Tile Funds, consisting of: (1) a principal deficiency in the amount of $56,869.26; (2) interest of $24,155.95; (3) liquidated damages of $9,988.68; and (4) audit costs of $1,600.

20. In December 2015, representatives of the Marble Funds completed an audit of SMG's books and records (the "2011-13 Marble Funds Audit") covering the period from January 1, 2011 through December 31, 2013.

21. The 2011-13 Marble Funds Audit revealed that SMG owed $20,047.13 to the Marble Funds, consisting of: (1) a principal deficiency in the amount of $12,768.96; (2) interest of $4,032.58; (3) liquidated damages of $2,245.59; and (4) audit costs of $1,000.

22. In June 2017, representative of the Marble Funds completed an audit of SMG's books and records (the "2014 Marble Funds Audit") covering the period from January 1, 2014 through December 31, 2014.

23. The 2014 Marble Funds Audit revealed that SMG owed $3,453.89 to the Marble Funds, consisting of: (1) principal deficiency in the amount of $2,833.80; and (2) interest of $620.09.

24. In June 2017, representative of the Tile Funds completed an audit of SCS' books and records (the "SCS Tile Funds Audit") covering the period from September 1, 2014 through December 31, 2016.

25. The SCS Tile Funds Audit[1] revealed that SCS owed $577,453.49 to the Tile Funds, consisting of: (1) a principal deficiency in the amount of $389,480.58; (2) interest of $117,598.51; (3) liquidated damages of $68,374.40; and (4) audit costs of $2,000.

**Alter Ego, Successor, and Single Employer Allegations**

26. At relevant times, Defendants are and were alter egos of each other and had substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

27. At relevant times, notwithstanding any nominal separation between them, Defendants also constituted a single integrated enterprise and had interrelated and interdependent operations, common management, centralized control of labor functions, common and/or family ownership, and shared facilities and equipment.

---

[1] The 2011-13 Tile Funds Audit, the 2014 Tile Funds Audit, the 2011-13 Marble Funds Audit, the 2014 Marble Funds Audit, and the SCS Tile Funds Audit shall be collective referred to as the "Audits."

28. Upon information and belief, SMG and SCS are owned and operated by Aurel Ceci. Mr. Ceci signed the CBAs on behalf of SMG and SCA as President of both entities.

29. Upon information and belief, SMG and SCS share common employees.

30. Upon information and belief, Defendants operate out of a common office located at 791 Onderdonk Avenue, Ridgewood, NY 11385.

31. Upon information and belief, Defendants share a single telephone number, which appears on the signature page of both SMG's and SCS' agreement with the Union.

32. Upon information and belief, Defendants share equipment.

33. Upon information and belief, SMG was incorporated in 2005 and SCS was incorporated in 2014. Despite this, SCS states on its website that it was founded in 2006.

34. Upon information and belief, an employee of SCS lists a start date in 2008 on professional networking websites, despite SCS being incorporated in 2014.

35. Upon information and belief, Defendants perform commercial and residential tile and marble installation and related construction work.

36. Upon information and belief, Defendants failed to follow ordinary corporate formalities or keep separate records, and there was never an arm's length relationship between or among the Defendants.

## FIRST CLAIM FOR RELIEF

37. Plaintiffs repeat the allegations set forth in paragraphs 1 through 36 above and incorporate them herein by reference.

38. At all relevant times, SMG and SCS were a party to, or manifested an intention to be bound by the CBAs.

39. At relevant times, Defendants were alter egos and/or successors of each other and/or constituted a single employer and had substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

40. By virtue of their status as alter egos, successors, and/or predecessors of each other and/or as a single employer, Defendants are and at all relevant times have been bound by the CBAs and are jointly and severally liable for each other's unpaid contributions to the Funds.

41. Upon information and belief, Defendants dispute Plaintiffs' contention that Defendants are alter ego, successors, and/or a single employer.

42. An actual controversy has arisen and now exists between the parties with respect to the status of Defendants as alter egos, successors, and/or a single employer.

43. Accordingly, the Funds seek a judicial determination, pursuant to 28 U.S.C. §§2201 and 2202, that Defendants are alter egos or successors, and/or constitute a single employer, that Defendants have at all times been bound by the CBAs, and that Defendants are jointly and severally liable for each other's unpaid contributions under the CBAs.

## SECOND CLAIM FOR RELIEF

44. Plaintiffs repeat the allegations set forth in paragraphs 1 through 43 above and incorporate them herein by reference.

45. At relevant times, SMG and SCS are and were parties to, or manifested an intention to be bound by the CBAs.

46. The CBAs and the documents and instruments governing the Funds require SMG and SCS, *inter alia*, to make specified hourly contributions to the Funds in connection with all Covered Work.

47. At relevant times, Defendants are and were alter egos or successors of each other, and/or constituted a single employer.

48. By virtue of their status as alter egos, successors, and/or predecessors of each other and/or as a single employer, Defendants are and have at all times been bound by the CBAs and are jointly and severally liable for each other's unpaid contributions to the Funds for the period January 1, 2011 through December 31, 2016 as set forth in the Audits.

49. Defendants contravened the CBA and Section 515 of ERISA by failing to pay contributions to the Funds for the period January 1, 2011 through December 31, 2016 in an amount to be determined at trial.

50. Accordingly, pursuant to §§ 502 and 515 of ERISA, 29 U.S.C. § 1132 and 1145, the CBA, and the documents and instruments governing the Funds, Defendants are jointly and severally liable to the Funds for delinquent contributions uncovered by the Audits in an amount to be determined at trial, plus interest at the rate of ten percent (10%) per annum with respect to amounts due to the Tile Funds and the Marble Funds, and fifteen percent (15%) per annum with respect to amounts due to the International Benefit Funds, liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions owing, reasonable attorneys' fees, audit fees, and other costs incurred during the audit and collections procedures.

### **THIRD CLAIM FOR RELIEF**

51. Plaintiffs repeat the allegations set forth in paragraphs 1 through 50 above and incorporate them herein by reference.

52. At relevant times, SMG and SCS are and were parties to, or manifested an intention to be bound by the CBAs.

53. The CBAs and the documents and instruments governing the Funds require SMG and SCS, *inter alia*, to make specified hourly contributions to the Funds in connection with all Covered Work and to submit to and comply with periodic payroll audits demanded by the Funds.

54. At relevant times, Defendants are and were alter egos or successors of each other, and or constituted a single employer.

55. By virtue of their status as alter egos, successors, and/or predecessors of each other and/or as a single employer, Defendants are and have all times been bound by the CBAs.

56. Accordingly, pursuant to §§ 502 and 515 of ERISA, 29 U.S.C. § 1132 and 1145, the CBAs, and the documents and instruments governing the Funds, the Funds are entitled to an order directing Defendants to submit to an audit of Defendants' books and records covering the period January 1, 2011 through the present and to pay all delinquent contributions revealed by such audit, plus interest at the rate of ten percent (10%) per annum with respect to amounts due to the Tile Funds and the Marble Funds, and fifteen percent (15%) per annum with respect to amounts due to the International Benefit Funds, liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions owing, reasonable attorneys' fees, audit fees, and other costs incurred during the audit and collections procedures.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

(1) On Plaintiffs' First Claim for Relief, declaring that Defendants are alter egos or successors, and/or constitute a single employer, that Defendants have all times been bound by the CBAs, and that Defendants are jointly and severally liable for each other's unpaid contributions to the Funds for the period January 1, 2011 through the present;

(2) On Plaintiffs' Second Claim for Relief, granting judgment to Plaintiffs against all Defendants, jointly and severally, for delinquent benefits uncovered by the Audits in an amount to be determined at trial, plus interest, liquidated damages, audit fees, reasonable attorneys' fees, and other costs incurred during the audit and collections procedures;

(3) On Plaintiffs' Third Claim for Relief, directing Defendants to submit to an audit of Defendants' books and records covering the period January 1, 2011 through the present and to pay all delinquent contributions revealed by such audit, plus interest, liquidated damages, audit fees, reasonable attorneys' fees, and other costs incurred during the audit and collections procedures; and

(4) Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: New York, New York        Respectfully submitted,
       October 6, 2017
                                 **VIRGINIA & AMBINDER, LLP**

                         By:     ___/s/ Nicole Marimon_____
                                 Charles R. Virginia, Esq.
                                 Nicole Marimon, Esq.

40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080

*Attorneys for Plaintiffs*